[Cite as *Davis v. Time Warner Cable*, 2017-Ohio-1191.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ANTHONY DAVIS | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27073 |
| | : | |
| v. | : | T.C. NO. 15CV2948 |
| | : | |
| TIME WARNER CABLE | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___31st___ day of _____March_____, 2017.

. . . . . . . . . .

ANTHONY DAVIS, 502 E. Wenger Road, Englewood, Ohio 45322
    Plaintiff-Appellant

VINCENT NORWILLO, Atty. Reg. No. 0047331, 1375 E. 9th Street, Suite 1600, Cleveland, Ohio 44114
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the pro se Notice of Appeal of Anthony Davis, filed April 7, 2016. Davis appeals from the March 9, 2016 Decision of the trial court adopting the Magistrate's decision on Time Warner Cable's ("TWC") Motion for Summary Judgment. For the reasons that follow, and in the absence of a final

appealable order, the instant appeal will be dismissed.

{¶ 2} Davis filed a pro se Complaint against TWC on June 5, 2015, that provides as follows:

> I was discriminated against and wrongfully fired. I was wrongfully fired for attendance. I was under a written contract with HR and security witch [sic] explained that Angela Kemp was falsifying my records, discriminating against me for being white and good at my job. HR fired me for the falsified time records entered by Angela Kemp then fired Angela Kemp for falsifying my time records.

{¶ 3} TWC answered the Complaint on July 8, 2015. On July 12, 2015, the trial court issued an "Order of Referral to Magistrate." On September 25, 2015, the matter was referred to mediation. On October 20, 2015, Davis filed a request for a jury, which the Magistrate overruled on October 23, 2015, noting that pursuant to Civ.R. 38(B), a jury demand must be served "at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue," and that failure to comply with the rule constitutes waiver. The Magistrate further noted that the last pleading was TWC's Answer, filed July 8, 2015. The Magistrate concluded that Davis' request was untimely.

{¶ 4} After TWC filed a request for an extension of the summary judgment deadline, Davis, on November 5, 2015, filed an "Objection to Motion for summary decision," a document entitled "Witness," and nine pages entitled "Exhibits filed by: Anthony Davis." On November 12, 2015, mediation was terminated. On November 13, 2015, Davis filed a 28 page document captioned "Exhibits," and a "Notice of delivery of

court documents." On November 17, 2015, the trial court adopted the Magistrate's decision which denied the request for a jury, noting that no objections were filed and concluding, "Plaintiff's Motion for Jury demand is untimely and therefore DENIED."

{¶ 5} TWC filed its motion for summary judgment on November 25, 2015. Therein TWC listed Davis' discipline history for attendance violations. TWC described its investigation into Davis' allegations of attendance records falsification. TWC asserted as follows:

Mr. Davis' Complaint fails as a matter of law. * * * Specifically, Plaintiff fails to allege in his Complaint that he is a member of a protected class. He fails to allege that he was qualified for the position. The overwhelming evidence is that throughout his career he continually violated TWC's attendance policy. The allegation regarding falsification is not only unsupported, but moreover completely controverted by the investigation of Deidra Bartlett and the attached time card entries which unequivocally and irrefutably found no falsification occurred. Plaintiff's claim further fails because he is unable to allege or produce any evidence that any individual who engaged in a similar pattern of attendance infractions and kept their job [sic]. Accordingly, Plaintiff's prima facie case fails.

{¶ 6} TWC asserted that even if Davis could establish a prima facie case of discrimination, TWC can articulate a legitimate, nondiscriminatory reason for Davis' termination, namely his "numerous, continued and escalating attendance infractions," which constituted "legitimate, nondiscriminatory business reasons for its termination decision." Finally, TWC asserted that Davis cannot establish that its articulated reasons

are pretextual, since Davis' "signature appears on each and every discipline document up until his termination." TWC attached its Employee Handbook, multiple documents reflecting Davis' attendance infractions, and the Affidavit of Deirdra Bartlett, a Human Resources representative at TWC. TWC also filed a Motion for Judgment on the Pleadings on November 25, 2015.

**{¶ 7}** On December 11, 2015, Davis filed a multi-page document captioned "Exhibits Proving allegations." On December 15, 2015, Davis filed a document captioned "Opposition to motion of summary judgment," and three days later he filed a "Request for Remedies," and a "Responce [sic] to hear or see case." On December 22, 2015, TWC filed a "Motion to Strike Plaintiff's Request for Remedies." On December 28, 2015, Davis filed an "Opposition to motion for judgment on the pleadings." On the same date, TWC filed "Defendant's Motion to Strike Plaintiff's Response (sic) to Hear or See Case." On December 30, 2015, "Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings" was filed.

**{¶ 8}** On February 22, 2016, the Magistrate's decision was filed. According to the Magistrate, "[f]or the most part, Defendant's Motion for Summary Judgment accurately reflects Plaintiff's disciplinary record before the Court as Defendant's Motion for Summary Judgment Exhibits (B) through (Q)." The Magistrate noted that where "Defendant's Motion for Summary Judgment differs from the attached documentation, the undersigned Magistrate finds that the data in the documentation, rather than the data in the Motion, is correct." The Magistrate listed 15 instances, beginning December 5, 2008 to May 18, 2013, establishing Davis violated TWC's attendance policy. The Magistrate concluded that the "overwhelming evidence * * * is that Plaintiff received 8.5 attendance

occurrences before he received his final occurrence on May 18, 2013." The Magistrate found that "the May 18, 2013 attendance occurrence led to Plaintiff's termination on June 7, 2013."

{¶ 9} The Magistrate noted that Davis asserted a claim for intentional infliction of emotional distress in his response to the motion for summary judgment, not in his complaint.

{¶ 10} The Magistrate reviewed the relevant law on at-will employment, racial discrimination under R.C. 4112.02, mixed-motive employment discrimination, retaliation under R.C. 4112.02, intentional infliction of emotional distress, and summary judgment analysis. The Magistrate concluded that TWC satisfied its initial summary judgment burden, and that Davis failed to demonstrate genuine issues of material fact, noting that in his "plethora of filings, there are no affidavits or sworn or certified copies of papers."

{¶ 11} The Magistrate found as follows (footnotes omitted):

Plaintiff fails to overcome the presumption that he was an at will employee of Defendant. The disclaimer in Defendant's Employee handbook stating that "Time Warner Cable (TWC) Employees are hired for an indefinite period of time and are considered 'at-will' employees[,]" negates "any inference of contractual obligations between the parties." Although Defendant's Employee Handbook states that the "policy does not apply to employees with written Contracts with the Company[,]" there is no evidence before the undersigned Magistrate regarding a written agreement, despite Plaintiff's argument that Ms. Bartlett's June 6, 2013 Letter is the "[c]losing of [a] contract." While Ms. Bartlett's May 17, 2013 Letter

indicated that Plaintiff's desired solution was to retain his employment, it is completely inconceivable that Ms. Bartlett's June 6, 2013 Letter could be construed as either part or a complete contract between the parties.

Furthermore, Plaintiff fails to present any direct or indirect evidence of racial discrimination in violation of R.C. 4112.02(A). Plaintiff does not identify who referred to him as a "cracker." Plaintiff also fails to prove a *prima facie* case of racial discrimination pursuant to *McDonnell Douglas v. Green*, [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] and/or a reverse discrimination theory. The adverse employment action here is Plaintiff's termination. While Plaintiff's own self-serving statement in his Complaint indicates that he is white, Plaintiff in his filings does not provide background circumstances supporting the inference that Defendant "was the unusual employer who discriminated against the majority." Additionally, there is no evidence before the undersigned Magistrate that Plaintiff was 1) qualified for his position, 2) replaced by someone from outside the protected class, 3) a comparable protected person was treated better, or 4) that Defendant treated Plaintiff disparately from similarly-situated minority employees.

Assuming, *arguendo*, that Plaintiff could prove a *prima facie* case of racial discrimination, Defendant has identified a legitimate, nondiscriminatory reason for Plaintiff's termination; Plaintiff's attendance issues. Pursuant to *McDonnell Douglas* and its progeny, the burden shifts back to Plaintiff to demonstrate that Defendant's reasoning is merely a

pretext for racial discrimination. Simply put, Plaintiff does not directly address this issue in his Response to Motion for Summary Judgment or his other filings.

However, Plaintiff attempts to challenge the validity of the attendance data leading to his termination. Admittedly, the undersigned Magistrate expresses her concern that Defendant's counsel glosses over the fact that Ms. Kemp's termination was due, at least in part, to her actions as Plaintiff's supervisor. Ultimately, the overwhelming evidence presented by Defendant demonstrates that Plaintiff habitually was either absent or late for work. Without demonstrating that attendance issues were a pretext for racial discrimination, whether or not Plaintiff received 9 or more occurrences is irrelevant because he was an at-will employee, meaning he could be terminated for any lawful reason at any time.

Although not plead by Plaintiff in his Complaint, or even alluded to in his numerous filings, Plaintiff fails to present a mixed motive discrimination claim because he fails to identify how race was a factor in his termination. Insofar as Plaintiff's Complaint can be interpreted as a retaliation claim pursuant to R.C. 4112.02(I), Plaintiff arguably 1) engaged in protected activity through his participation in Defendant's investigation of Ms. Kemp and Mr. Pinkney pursuant to Open Door Policy; 2) was subjected to an adverse employment action, namely his termination; and 3) linked his termination to his discovery of one of Ms. Kemp's team member's scheme of stealing sales from other employees. However, Defendant identified

Plaintiff's attendance issues as the legitimate reason for his termination, thereby shifting the burden back to Plaintiff. Ultimately, Plaintiff fails to demonstrate that his attendance issues were a pretext.

While Plaintiff does not state a cause of action for intentional infliction of emotional distress in his Complaint, he asserts the claim in his Response to Motion for Summary Judgment. The only evidence before the undersigned Magistrate regarding this claim are: 1) the references in Ms. Bartlett's May 17, 2013 and June 6, 2013 Letters regarding Plaintiff's allegation that Mr. Pinkney threatened Plaintiff, which Defendant found to be unsubstantiated; 2) Defendant's self-serving statement in his November 5, 2015 Objection to Motion for Summary Judgment that an unnamed person threatened to break Plaintiff's legs; 3) the Miami Valley Hospital Statements which contain Plaintiff's medical bills, but do not describe his injuries, if any; and 4) October 30, 2014 Letter from the Flexman Clinic, which simply indicates that Plaintiff had not sought services at the clinic for some time.

In short, even in the light most favorable to the nonmoving party, Plaintiff fails to demonstrate that 1) anyone associated with Defendant "either intended to cause emotional distress or knew or should have know[n] that actions taken would result in serious emotion [sic] distress to" Plaintiff; 2) "the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community[;]" 3) the actor's actions were the

proximate cause of [Plaintiff's] psychic injury[;] and 4) "that the mental anguish suffered by [P]laintiff is serious and of a nature that no reasonable person could be expected to endure it."

**{¶ 12}** Also on February 22, 2016, Davis filed a "dismissal without prejudice," which provides, "I would like to dismiss my case without prejudice."

**{¶ 13}** On March 9, 2016, the trial court adopted the Magistrate's Decision. The court's Judgment Entry provides:

* * *

The Court finds that the parties in this case have not caused to be filed any objections to the Magistrate's Decision pursuant to Civ.R. 53 (D) (3) (b).

The court next proceeds to determine whether or not there is any error of law, or defect on the face of the Magistrate's Decision and the Court finds neither to be present.

Therefore, the Court adopts the Magistrate's Decision, its findings, conclusions and decision as the Court's own, and this entry shall serve and be the final judgment entry and order of the Court.

**{¶ 14}** On March 14, 2016, Davis filed an "Objection to decision made." It provides: "On February 22, I entered and filed a motion to dismiss my case without prejudice." It further provides: "I plan to re-open my case with legal representation. Please review the docket and grant my motion to dismiss per Ohio law. The decision was not made or received until Feb. 26th."

**{¶ 15}** On March 18, 2016, the trial court issued an "Order and Entry Overruling

Plaintiff's Objection."   The Entry provides:

* * * In the Objection, Plaintiff asserts that his Motion to Dismiss, filed February 22, 2016, should have been granted instead of the Magistrate granting Defendant's Motion for Summary Judgment. * * *

The Decision was filed February 22, 2016 at 10:41 a.m. *Decision*, p. 1.   Plaintiff's Motion to Dismiss was not filed until 4:09 p.m.   *Motion*, p. 1. Thus, the Decision was made prior to Plaintiff's attempt to dismiss his case without prejudice.   The Decision was adopted by the Court on March 9, 2016, and the parties were notified on March 11, 2016 that the March 9, 2016 Judgment Entry Adopting the Magistrate's Decision may be a final appealable order.   *See, Docket.*

Accordingly, Plaintiff's proper remedy lies with the Court of Appeals and as such, the Court hereby **OVERRULES** Plaintiff's Objection.   Any such appeal must be made within thirty days of March 9, 2016.

{¶ 16}  Davis asserts the following assignment of error:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE, TIME WARNER CABLE (TWC).

{¶ 17}  Civ.R. 41 provides as follows (emphasis added):

(A) Voluntary dismissal; effect thereof:

(1) By plaintiff * * *. Subject to the provisions of Civ.R. 23(E), Civ.R. 23.1, and Civ.R. 66, a plaintiff, without order of the court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the

following:

(a) filing a notice of dismissal *at any time before the commencement of trial* unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant:

* * *

**{¶ 18}** "Ohio courts have held that a summary judgment proceeding is not a trial, but a hearing upon a motion. *Morris v. First National Bank & Trust Co.* (1968), 15 Ohio St.2d 184." *Harris v. Coy*, 2d Dist. Montgomery No. 11339, 1989 WL 65237, *2 (June 13, 1989). In *Jackson v. Allstate Ins. Co.,* 2d Dist. Montgomery No. 20443, 2004-Ohio-5775, ¶ 33, quoting *Standard Oil v. Grice*, 46 Ohio App.2d 97, 100-101, 345 N.E.2d 458 (2d Dist. 1975), this Court noted as follows:

"The language of Civil Rule 41(A)(1) and (C) requires no construction. It gives either party an absolute right, regardless of motives, to voluntarily terminate its cause of action at any time prior to the actual commencement of the trial. There is no exception in the rule for any possible circumstance that would justify a court in refusing to permit the withdrawal of a cause prior to the commencement of trial. This is the traditional Ohio policy of encouraging terminations. While such rule may be subject to abuse, as was recognized by the civil rules committee, the only limitation imposed is that a notice of dismissal operates as an adjudication upon the merits when filed by a party who once previously dismissed an action based on the same claim." * * *

**{¶ 19}** This Court's decision in *Giambrone v. Spalding and Evenflo Co., Inc.*, 2d

Dist. Miami No. 96CA08, 1997 WL 189465 (April 18, 1997), is further instructive:

Giambrone originally brought an action against Evenflo for age discrimination in the Miami County Common Pleas Court in October of 1990. Evenflo moved the common pleas court for Summary Judgment. The trial court entered decision sustaining Evenflo's motion for Summary Judgment on April 8, 1994. The court stated in its decision that "* * * Counsel for the Defendant shall prepare and circulate a final judgment entry in accordance with the findings of the court." Before the Defendant prepared a final judgment entry for the court, however, Giambrone put on a motion for voluntary dismissal under Civ.R. 41. The trial court granted Giambrone's motion and dismissed the case without prejudice.

Thereafter, on April 17, 1995, Giambrone brought an action for age discrimination against Evenflo in Montgomery County. Evenflo moved the Montgomery County Court of Common Pleas to transfer the venue to Miami County where Evenflo is located. The trial court granted the motion and referred the case back to Miami County. On September 8, 1995, Evenflo moved the court to dismiss the complaint or, in the alternative, for summary judgment. Evenflo asserted in its Motion to Dismiss that the trial court's previous decision to grant summary judgment barred relitigation of Giambrone's claims under the doctrines of res judicata, law of the case, and collateral estoppel. On February 27, 1996, the trial court overruled Evenflo's Motion to Dismiss, concluding that Civ.R. 41 permitted Giambrone to dismiss the case and that, therefore, "* * * the [previous] action * * * [had

to] be treated as if it had never commenced." The trial court then proceeded to consider Evenflo's Motion for Summary Judgment. The court determined that there was no genuine issue of material fact and that Evenflo was entitled to judgment on all counts of the complaint as a matter of law.

Evenlfo now argues that the trial court incorrectly denied its Motion to Dismiss because the trial court's decision to grant summary judgment in favor of Evenflo in the first action was journalized and, therefore, was a final decision which precluded the grant of a voluntary dismissal in the same action. Moreover, Evenflo contends that the court's decision to grant summary judgment in the first action was a final appealable order. Thus, Evenflo asserts that Giambrone needed to appeal from that decision. Since Giambrone did not appeal the court's first decision and the time for appealing that decision has run, Evenflo argues that the trial court's decision to grant summary judgment in favor of Evenflo in the first action is controlling in this present action. Evenflo asserts that Giambrone is precluded from appealing the trial court's grant of summary judgment in favor of Evenflo in the present action because the issue of age discrimination was conclusively resolved in the earlier action.

We are unpersuaded by Evenflo's contention. In *St. Vincent Charity Hosp. v. Mintz* (1987), 33 Ohio St.3d 121, 515 N.E.2d 917, the Ohio Supreme Court held that where a trial court enters a decision stating that the prevailing party should prepare a final judgment entry in accordance

with the court's decision, the latter is an announcement of the court's findings and is not the court's final judgment entry. In the present case, it is clear from the trial court's original decision granting summary judgment in favor of Evenflo that it was not the court's final judgment entry. The court explicitly stated that the final judgment entry was to be journalized later. The court wrote, "* * * it is the further order of this Court that Counsel for the defendant shall prepare and circulate a *final judgment entry* in accordance with the findings of this Court." (Emphasis added.) Because the trial court had not yet rendered a final judgment on the matter, Giambrone was permitted under Civ.R. 41 to move for a voluntary dismissal.

Furthermore, if a party is granted a voluntary dismissal, the action is treated as if it had never been commenced. Hence, the dismissed action cannot serve to bar a later action on the grounds of res judicata, collateral estoppel, or law of the case. This means that in the present case that the trial court's unexecuted decision that summary judgment should be granted in favor of Evenflo could not be used to bar Giambrone's subsequent action in view of the court's grant of Giambrone's motion to dismiss. Therefore, we find that Giambrone could not have appealed the trial court's original decision, and that Giambrone's present appeal of the court's grant of summary judgment in favor of Evenflo in the subsequent action is proper. * * *

{¶ 20} Based upon the foregoing, we conclude that Davis' sole assigned error is meritorious. Since the trial court had not entered a final judgment on the matter at the

time that Davis filed his motion to dismiss without prejudice, we conclude that Davis was permitted under Civ.R. 41 to move for a voluntary dismissal.

{¶ 21} We note that at oral argument, counsel for TWC directed our attention to this Court's decision in *Brenman v. Reck*, 2d Dist. Miami No. 2004 CA 3, 2004-Ohio-5828, suggesting that the intended effect of Davis' dismissal was precluded by local rule. Therein, Brenman filed a 41(A) notice of dismissal, and the clerk of courts "refused to give effect to her filing because she had failed to pay court costs, which is a prerequisite to dismissal under the local rules." *Id.*, ¶ 5. This Court noted that "Miami County Municipal Court Loc.R. 15.1 provides, in pertinent part 'No case shall be dismissed by the Parties, nor shall any Satisfaction of Judgment be filed unless all Court Costs are paid.' It is undisputed that Brenman filed her notice of voluntary dismissal without paying outstanding court costs." *Id.*, ¶ 9. This Court concluded that "Brenman's complaint was not dismissed." *Id.*, ¶ 14.

{¶ 22} Counsel for TWC directed our attention to Montgomery County Local Rule 2.15, which governs dismissal of actions and provides: "(A) VOLUNTARY DISMISSAL – NOTICE REQUIREMENT: Any party or party's counsel who has filed a notice of dismissal or a stipulation of dismissal pursuant to Civ.R. 41(A)(1) shall promptly inform the assigned Judge of the voluntary dismissal."[1] However, Montgomery County Local Rule 1.15 governs the filing of court documents and removal of papers from custody of the clerk and provides: "Except as otherwise provided in Subsection (J) of this Rule, all civil and criminal cases, including all pleadings, motions, briefs, memoranda of law, deposition transcripts, transcripts of proceedings, orders or other documents, shall be filed

---

[1] Adopted effective July 1, 1993; Amended effective June 4, 2010, August 29, 2014.

electronically through the Court's authorized electronic filing system ('eFile System')."[2]

**{¶ 23}** We note that Davis' motion to dismiss was e-filed on February 22, 2016. Hence, counsel for TWC's argument that the trial court was not properly informed of the filing pursuant to Local Rule 2.15, given the mandatory requirement of e-filing in the common pleas court, lacks merit.

**{¶ 24}** For the reasons noted above, Davis' motion to dismiss remains pending, and the trial court is therefore authorized to dismiss the matter herein without prejudice. Accordingly, we hereby dismiss the instant appeal for lack of a final appealable order.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Anthony Davis
Vincent Norwillo
Hon. Michael W. Krumholtz

---

[2] Amended 8/7/07, effective 8/13/07; Amended 5/3/11, effective 8/8/11; Amended 3/4/14, Effective 3/21/14; Amended 8/12/14, effective 8/29/14.