[Cite as *Younker v. Hayes*, 2018-Ohio-835.]

STATE OF OHIO       )
                    )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

DONALD YOUNKER

    Appellant

    v.

PATTY HAYES

    Appellee

C.A. No.    28521

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-02-0990

DECISION AND JOURNAL ENTRY

Dated: March 7, 2018

CALLAHAN, Judge.

{¶1} Appellant, Donald Younker, appeals the judgment of the Summit County Common Pleas Court. For the reasons set forth below, this Court reverses.

I.

{¶2} Appellee, Patty Hayes, owned four Personal Seat Licenses ("PSLs") at the Cleveland Browns Stadium. Ms. Hayes's PSLs reserved four seats on the 50-yard line, at the railing, on the north side of the stadium in section 133. As the owner of the PSLs, Ms. Hayes was obligated each year to purchase season tickets for the seats which she could then use or sell. Failure to purchase season tickets would result in the PSLs reverting back to the Cleveland Browns and the seats being available to the general public or to those on a waiting list.

{¶3} Mr. Younker's co-worker told him about Ms. Hayes's PSLs and available season tickets. Ms. Hayes and Mr. Younker never met in person and only communicated through email.

{¶4} In 2014 and 2015, Mr. Younker purchased the season tickets at face value from Ms. Hayes. At the end of the 2015 season, Mr. Younker asked Ms. Hayes if she would sell the PSLs to him. Ms. Hayes indicated that she "paid $8[,]000 for the four licenses [and] would like to get $4[,]000 back." Mr. Younker agreed to the $4,000 price and sent Ms. Hayes a check for the full amount.

{¶5} During the next two weeks, Ms. Hayes confirmed receipt of Mr. Younker's payment and contacted the Cleveland Browns' front office to execute the necessary paperwork to transfer ownership of the PSLs. The Cleveland Browns' front office indicated to Ms. Hayes that the PSLs were worth more than her asking price and that there was a 40-year waiting list for these specific seats. Based on this information, Ms. Hayes "believe[d she could] get more than $1[,]000 per seat" and advised Mr. Younker that she "[could not] commit to selling [him her] PSL[]s for $4[,]000." A week later, Mr. Younker filed a complaint for breach of contract and sought specific performance and money damages. A few weeks later, Ms. Hayes returned Mr. Younker's $4,000 check to him.

{¶6} Despite being properly served with the complaint and summons, Ms. Hayes did not file an answer. Mr. Younker filed a motion for default judgment which was granted as to the issue of liability and a hearing was scheduled as to the damages.

{¶7} A magistrate presided over the damages hearing. Neither Ms. Hayes nor an attorney appeared on her behalf. The only witness at the damages hearing was Mr. Younker. During the hearing, Mr. Younker testified regarding the above facts and his damages. Mr. Younker requested relief in the form of specific performance and money damages.

{¶8} Mr. Younker testified that Ms. Hayes's PSLs were for four specific seats, 6, 7, 8, and 9, in the front row on the 50-yard line, and thus were not seats that could be obtained

elsewhere or duplicated. Because of their location in relation to the playing field, the seats offered an unobstructed view of the game and protection from the lake winds. Mr. Younker described the seats as being "primo seats."

{¶9} Mr. Younker also testified to the value of the PSLs based on his research. He testified that a website that sells Cleveland Browns PSLs indicated that seats in the vicinity of Ms. Hayes's PSLs were worth approximately $10,000 to $11,500 each.

{¶10} The magistrate denied Mr. Younker specific performance and awarded him zero money damages. Mr. Younker timely filed objections and the transcript of the damages hearing. The trial court overruled Mr. Younker's objections and adopted the magistrate's decision. Mr. Younker has timely appealed this judgment and asserts three assignments of error.

{¶11} Before addressing the merits of the appeal, this Court notes that Ms. Hayes did not file a brief. As such, this Court "may accept [Mr. Younker's] statement of the facts and issues as correct and reverse the judgment if [Mr. Younker's] brief reasonably appears to sustain such action." *See* App.R. 18(C).

II.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S DECISION FINDING [MS. HAYES] NOT LIABLE FOR BREACH OF CONTRACT BASED UPON THE AFFIRMATIVE DEFENSE OF MUTUAL MISTAKE OF FACT IN DISREGARD OF THE UNDISPUTED EVIDENCE AND THE DEFAULT JUDGMENT RENDERED AGAINST [MS. HAYES.]

{¶12} Mr. Younker argues that the trial court abused its discretion when it adopted the magistrate's decision and improperly applied the affirmative defense of mutual mistake to render the money damages decision when the issue of liability had been determined as a matter of law based upon Ms. Hayes's failure to answer the complaint. Mr. Younker also asserts that the trial

court applied the wrong test to determine the fair market value of the PSLs. This Court agrees with both arguments.

{¶13} Initially, this Court notes that Mr. Younker has asserted the wrong standard of review. He is correct that this Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "Although the trial court has discretion when finding facts and applying those facts to the law, the trial court commits an error of law if it does not follow the law." *Foster v. Foster*, 9th Dist. Wayne No. 09CA0058, 2010-Ohio-4655, ¶ 6. In such instances, questions of law exist and a de novo standard of review applies. *Id*. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio,* 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4. Mr. Younker's first assignment of error presents this Court with two questions of law, namely, whether the trial court correctly applied the affirmative defense of mutual mistake and whether it applied the correct measure of damages.

**Mutual mistake**

{¶14} "A party who fails to file a timely pleading in response to an affirmative pleading runs the risk of having a default judgment entered against them." *Helms v. Stegeman*, 9th Dist. Summit No. 27995, 2016-Ohio-5118, ¶ 9, citing *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hosp. Assn.,* 28 Ohio St.3d 118, 121 (1986). *See* Civ.R. 55(A). "The essence of a default judgment is that defendants, by their failure to appear, conclusively confess the allegations and claims of the plaintiff against them and admit the cause of action." *Horwat v. Beck*, 9th Dist. Summit No. 12144, 1985 Ohio App. LEXIS 9154, *5-6 (Oct. 30, 1985); *see* Civ.R. 8(D). *Accord Prather v. Am. Med. Response, Inc.*, 9th Dist. Summit No. 20965, 2002-Ohio-5261, ¶ 15

("[B]y failing to answer [plaintiff's] complaint, [defendant] admitted liability."). After the entry of a default judgment, "the only remaining triable issue is the amount of damages." *Girard v. Leatherworks Partnership,* 11th Dist. Trumbull No. 2004-T-0010, 2005-Ohio-4779, ¶ 38; *Prather* at ¶ 15.

{¶15} A mutual mistake that is material to a contract occurs when both parties, at the time of entering the contract, make a "'mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.'" *Reilley v. Richards*, 69 Ohio St.3d 352, 353 (1994), quoting 1 Restatement of the Law 2d, Contracts, Section 152(1) (1981). This Court has recognized that mutual mistake is not a claim, but rather "'a reason to make an otherwise valid contract voidable in a rescission action.'" *Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 16, quoting *Williams v. Clarke*, 8th Dist. Cuyahoga No. 93973, 2010-Ohio-3318, ¶ 16. Thus, a determination that there is a mutual mistake "means that the parties have not reached an agreement and no enforceable contract exists." *Rylee Ltd. v. Izzard Family Partnership*, 178 Ohio App.3d 172, 2008-Ohio-4506, ¶ 13 (3d Dist.).

{¶16} Mutual mistake, while not one of the specifically enumerated defenses in Civ.R. 8(C), has been recognized as an affirmative defense that is waived when it is not raised in the pleadings. *Amare v. Chellena Food Express, Inc.*, 10th Dist. Franklin No. 08AP-678, 2009-Ohio-147, ¶ 18, quoting *Fox & Lamberth Ents., Inc. v. Craftsmen Home Improvement Inc.*, 2d Dist. Montgomery No. 21060, 2006-Ohio-1427, ¶ 60, citing *Mayer v. Medancic,* 11th Dist. Geauga Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, 2001 Ohio App. LEXIS 5863, *4 (Dec. 21, 2001), fn. 6. A trial court should refrain from sua sponte raising an affirmative defense for a party because such conduct deprives the parties of notice and an opportunity to respond to

the newly raised issue. *See N. Olmsted Auto Paint & Supply Co. v. Lettieri*, 9th Dist. Lorain No. 91CA005211, 1992 Ohio App. LEXIS 3835, *8-9 (July 22, 1992).

{¶17} In this case, Ms. Hayes never filed an answer or otherwise appeared in response to Mr. Younker's complaint for breach of contract, resulting in a default judgment as to liability against her. The result of the default judgment was Ms. Hayes having conclusively admitted to breaching the contract to sell the PSLs to Mr. Younker. *See Horwat*, 1985 Ohio App. LEXIS 9154, at *5-6; *Prather*, 2002-Ohio-5261, at ¶ 15. Because Ms. Hayes was in default, she implicitly waived all affirmative defenses. *See Amare* at ¶ 18. The only issue that remained was the amount of Mr. Younker's money damages and his request for specific performance. *See Prather* at ¶ 15.

{¶18} At the damages hearing, Mr. Younker testified to the parties' actions with regard to the contract and addressed both the value and uniqueness of the PSLs. Despite the limited scope of the damages hearing, the magistrate sua sponte applied mutual mistake to the contract and concluded that the fair market value of the PSLs was $4,000 and money damages were inequitable.

{¶19} In response to Mr. Younker's objection regarding the magistrate's application of mutual mistake, the trial court concluded that "the Magistrate's Decision reveals the Magistrate did not nullify this Court's default on liability or rescind the contract by asserting mutual mistake in price, a contract defense, in her decision on damages." The trial court acknowledged that the magistrate's damages decision "use[d] mutual mistake language," but seemingly excused that fact by finding that the magistrate did so in conjunction with other case law to reach the damages award. However, the trial court effectively applied mutual mistake when it concluded that "[t]he Magistrate did not err in finding the value of $44,000.00 was not within the contemplation of the

parties at the time the agreement was made and a judgment in that amount would result in a windfall to [Mr. Younker].”

{¶20} Despite the existing default judgment as to liability against Ms. Hayes, the trial court sua sponte applied mutual mistake in order to deny Mr. Younker money damages and effectively rescind the contract. In doing so, the trial court ignored Ms. Hayes's conclusive admission of liability as to the breach of contract and implicit waiver of mutual mistake. Accordingly, the trial court erroneously applied mutual mistake in this case.

**Fair market value**

{¶21} Mr. Younker also argues that the trial court incorrectly applied the law when it determined the fair market value of the PSLs in order to calculate the money damages. Mr. Younker asserts the trial court used the contract price as the fair market value.

{¶22} The trial court concluded that "$4,000[] was the fair market value of the PSLs *at the time the parties entered into their contract*." (Emphasis added.) The trial court then concluded that because Ms. Hayes returned Mr. Younker's $4,000 check to him (the contract price), no money damages were due to him.

{¶23} The measure of damages "'in cases of executory contracts for the purchase or sale of personal property[1] * * * is the difference between the contract price and the market price of the goods *at the time when the contract is broken*.'" (Emphasis added.) *Reed v. Triton Servs., Inc.*, 12th Dist. Clermont Nos. CA2013-07-55, CA2013-07-060, 2014-Ohio-3185, ¶ 15, quoting *W. Union Tel. Co. v. Hall*, 124 U.S. 444, 456 (1888).

---

[1] A personal seat license is considered personal property. *Rayle v. Bowling Green State Univ.*, 108 Ohio Misc.2d 60, 63 (Ct. of Cl.2000).

{¶24} The trial court made two errors in relation to the fair market value. First, the trial court calculated the fair market value at the wrong point in time by determining the value of the PSLs at the time the parties entered into the contract, as opposed to when the breach occurred. Second, the trial court incorrectly concluded that the contract price and the fair market value of the PSLs were one and the same when it applied mutual mistake and ignored the admissions inherent in the default judgment regarding the value of the PSLs.[2]

{¶25} Mr. Younker's first assignment of error is sustained. This matter is remanded to the trial court to apply the correct measure of damages and to determine the issue of money damages.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S DECISION REFUSING TO ORDER SPECIFIC PERFORMANCE AS A REMEDY FOR [MS. HAYES'S] BREACH OF THE SALES CONTRACT[.]

{¶26} Mr. Younker contends the trial court abused its discretion when it denied him specific performance. Specifically, Mr. Younker argues "[t]here is no evidence in the record or legal basis for the trial court's refusal to order specific performance."

{¶27} While Mr. Younker contends that the trial court had "no * * * legal basis for [its] refusal to order specific performance," he failed to cite any legal authority as to why he should be awarded specific performance. In fact, Mr. Younker failed to include any legal authority regarding specific performance in his appellate brief. "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and *to legal authority*." (Emphasis added.) *See State v. Watson*, 9th Dist. Summit No. 24232, 2009-

---

[2] For instance, the admitted facts include that Ms. Hayes sold the PSLs for less than they were worth and that she later decided to sell the PSLs for more than the contract price.

Ohio-330, ¶ 5, citing App.R. 16(A)(7). When an appellant fails to cite to any legal authority supporting his assignment of error, it is not this Court's duty "to search for authority to support an appellant's argument as to an alleged error." *Harris v. Nome*, 9th Dist. Summit No. 21071, 2002-Ohio-6994, ¶ 15, citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996). *See Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998). ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Thus, pursuant to App.R. 12(A)(2) and App.R. 16(A)(7), this Court declines to address this argument.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S DECISION REFUSING TO AWARD DAMAGES AGAINST [MS. HAYES] FOR BREACH OF CONTRACT[.]

**{¶28}** Mr. Younker asserts that the trial court erred in adopting the magistrate's decision which "exclude[ed] the prices [he] obtained from [i]nternet websites as constituting hearsay." This Court does not reach the merits of this argument because Mr. Younker did not raise this issue in his objections to the magistrate's decision.

**{¶29}** "Failure to specifically raise an argument in an objection to a magistrate's decision results in a forfeiture of that argument on appeal." *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9. A party may, nonetheless, argue plain error on appeal. *See* Civ.R. 53(D)(3)(b)(iv). Mr. Younker, however, did not make a plain-error argument to this Court. "'[T]his [C]ourt will not sua sponte undertake a plain-error analysis if a[n appellant] fails to do so.'" *Coleman* at ¶ 9, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41, citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11.

Because Mr. Younker has forfeited this argument and has not argued plain error, this Court will not address this argument.

## III.

{¶30}  Mr. Younker's first assignment of error is sustained, and this Court declines to address his second and third assignments of error. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

DAVID P. BERTSCH, Attorney at Law, for Appellant.

PATTY HAYES, pro se, Appellee.